## MARKER v. INDUSTRIAL COMMISSION

No. 5454. Decided November 19, 1934. (37 P. [2d] 785.)

*Bosone & Bosone,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Grover A. Giles,* Deputy Atty. Gen., for defendant.

FOLLAND, Justice.

This case is here on writ of certiorari to review an order of the Industrial Commission of Utah denying application of plaintiff for compensation from a special fund administered by the Industrial Commission and known as the employees' combined injury benefit fund. Comp. Laws Utah 1917, § 3140, as amended by Laws of Utah 1919, c. 63, p. 163, as amended by Laws of Utah 1921, c. 67, p. 176; R. S. Utah 1933, 42-1-64.

Plaintiff in his petition before the commission alleged an injury while working in Colorado in 1903 resulting in total blindness of the right eye; that subsequently in January, 1929, while employed by the Utah Fuel Company at Castle

Gate, Utah, he sustained injuries to his left leg resulting in loss by amputation of the leg below the knee; that he had been fully compensated by the Utah Fuel Company prior to this application for the loss of his leg; that, by reason of the loss of vision in his right eye in 1903 and the loss of his leg in 1929, he is permanently and totally disabled, and thereby is entitled to "some relief" from the special fund pursuant to R. S. Utah 1933, 42-1-65, which reads as follows:

"If any employee who has previously incurred permanent partial disability incurs a subsequent permanent partial disability such that the compensation payable for the disability resulting from the combined injuries is greated than the compensation which, except for the preexisting disability, would have been payable for the latter injury, the employee shall receive compensation on the basis of the combined injuries, but the liability of his employer shall be for the latter injury only and the remainnder shall be paid out of the special fund provided for in subdivision (1) of section 42-1-64."

The commission made findings and conclusions as follows:

"In 1903, while employed by the Colorado Fuel and Iron Company at Sopris, Colorado, John Marker, applicant herein, sustained an injury to his right eye by reason of a premature explosion of a dynamite cap. The injury was caused by a foreign body entering the right eye. As a result of said injury applicant is blinded to a point where he can count fingers, without the aid of correcting lenses, at a distance of but two feet; that as a result of the injury applicant suffered a traumatic cataract which has been almost entirely absorbed, but which has left rather extensive gray membrane. No corrective surgery has ever been resorted to by the applicant for the purpose of recovering any degree of his sight in said eye by surgical interference.

"The applicant has sustained the loss of his left leg below the knee due to his injury of January 10th, 1929, while employed by the Utah Fuel Company, and for which loss he has been fully paid. The applicant is not in fact permanently and totally disabled. He is physically capable of doing any type of work which he did before his injury of January 10th, 1929.

"In view of the foregoing facts the Commission concludes that ap-

plicant would not be entitled to the relief sought by reason of the fact, (a) that the loss of vision in his right eye is not total; (b) that said injury resulting in the loss of vision was sustained in a foreign jurisdiction and long before the Workmen's Compensation Act of this State was adopted; (c) that the provisions of subsection 6 of Section 3140 of the State Industrial Act is not retroactive when construed with Section 3139; (d) that the applicant would not be entitled to the benefits sought by reason of the fact that he has not made an effort, by means of surgery, to restore the vision in his right eye and has not given any evidence to show that a considerable amount of recovery of lost vision to his right eye may not be had by such procedure; (e) that the burden is on him to prove that the loss of vision is total and permanent, which burden he has not sustained; (f) that the applicant has not lost his right eye; (g) that the Legislature never intended to create a status of permanent total disability by statute which does not exist in fact.

"Wherefore, it is ordered, that applicant's claim be and the same hereby is denied."

The only question argued and relied on in this court by the Attorney General, representing the Industrial Commission, is that the decision of the commission should be sustained because the injury to the employee's eye occurred before the Workmen's Compensation Law of this state was effective, and that the law is not retroactive. This calls for a construction of the statute, and particularly whether the permanent partial disability "previously incurred" is limited to a disability incurred after the effective date of the act, or, whether the Legislature intended the provision applicable to an employee who had suffered permanent partial disability whether incurred before or after the act took effect. This issue is stated by the Attorney General as follows:

"Neither is it difficult for us to determine the general intent of the Legislature in the enactment of the statute we are called upon to construe. Indeed, we think it may be conceded that such statute was enacted primarily to protect the wage earner to afford him an opportunity to secure employment in case he had the misfortune to be blinded in one eye, or had lost a limb, etc., but the serious question that arises and the only one which we think this court is obliged to pass upon is whether or not under the rules of statutory construc-

tion the Commission would have been justified in giving retroactive effect to the statute in question and grant the applicant an award as prayed for."

The case is one of first impression. The creation of a special fund devoted to the purposes set forth in the statute is peculiar to this state. There are, however, provisions in the compensation statutes of other states which use the terms "previous injury" and "previous disability." Cases construing these phrases may be helpful here, as may also other cases where a previous disability is considered as producing, when combined with a subsequent permanent partial disability, a condition of total permanent disability. We shall refer to these cases later in this opinion.

The Attorney General urges the well-known rule that legislative enactments, in the absence of clearly expressed intent to the contrary, will be deemed to be prospective and not retrospective; that workmen's compensation acts have been held not to apply to injuries which occurred before the law went into effect. Many authorities are cited in support of these views, including 28 R. C. L. 715; 25 R. C. L. 787; 59 C. J. 1150; and *Mercur Gold Mining & Milling Company* v. *Spry*, 16 Utah 222, 52 P. 382. The principle of law thus stated may be conceded to be correct, but it does not reach the problem before us. Subdivision 6 of section 3140, Comp. Laws Utah 1917, as amended (R. S. 1933, 42-1-65), provides for compensation to be paid because of a condition of disability created subsequent to the date of the act by reason of a subsequent partial disability combined with a previous partial disability. It is the condition of the employee resulting because of a subsequent injury that is to be compensated. The statutory language is broad and sweeping in its scope. The word "previously" is used without limitation or condition. This word is defined in Webster's New International Dictionary as "beforehand; antecedently," and "previous," is defined as "going before in time; being or happening before something else; antecedent; prior." The Legislature saw fit to use the word without

limitation as to time. We must conclude, therefore, that the disability referred to is one that had been incurred at any time previous to the subsequent partial disability. The Legislature having imposed no limitation or condition as to time or place of the incurring of the previous disability, we know of no rule of law which requires or permits us to do so by way of construction. The Legislature undoubtedly intended, as is conceded by the Attorney General, to provide protection for men who had already been partially permanently disabled, but yet were able to do work. Without some provision of this kind, employers would be extremely hesitant in employing men partially disabled, since an injury resulting in partial permanent disability of the employee might well impose greater liability on the employer than a similar injury incurred by a person not previously disabled. The legislative intent is fully met only when the words "previously incurred" are construed to refer to disability incurred at any time previous to the subsequent disability and to include cases of permanent patrial disability incurred before, as well as after, the effective date of the act. To this extent the provision operates retrospectively by legislative intent clearly expressed.

The benefits of the compensation law are applicable, according to decisions in many jurisdictions, when the condition resulting from accidental injury is permanent total disability, even though the employee's previous condition contributed to such result. One of the most troublesome questions the courts have had to decide with respect to this question has been whether total permanent incapacity exists within contemplation of a provision for compensation on that basis "where an injury which occasions a loss of some member or part of the body, or its use, which would be only a partial incapacity in the case of a normal person, is inflicted on one who had, prior to the particular injury or accident, already lost some other member or part, or its use." 67 A. L. R. 794, note. There is a sharp conflict in the decisions on this point depending largely on the

wording of different statutes. What may be said to be the prevailing view is that "total incapacity may properly be predicated upon such a loss to a person who has already been deprived of another member or its use; and this view has been taken even where the loss of the other member, or of its use, was not attributable to the same employment." 67 A. L. R. 794. See cases cited in the annotation in 67 A. L. R. for the prevailing view, page 794, and the minority view, page 797. This court has never been called on to decide between these views. By amendment of section 3140, Comp. Laws Utah 1917 (Laws 1919, c. 63, p. 164), shortly after the passage of the Industrial Act, a special fund was created for the purpose of taking care of such a situation, thus precluding the necessity for such a decision. This court has held that, where the subsequent injury to a workman previously disabled, without combining with a previous injury or condition, results in total permanent disability, the employer is liable for the whole award. *Standard Coal Company* v. *Industrial Commission*, 69 Utah 83, 252 P. 292; *Brown, Terry & Woodruff Company* v. *Industrial Commission*, 78 Utah 15, 300 P. 945. Where the subsequent permanent partial disability combined with the previous condition results in total permanent disability, then by our statute the employer is liable only on the basis of the latter injury, and the balance of compensation is payable out of the special fund.

We turn now to the cases which lend support to the construction we have given the statute. The Kentucky Workmen's Compensation Law, § 4901 (Ky. St.), provides:

"If a previously injured employee sustains a subsequent injury which results in a condition to which both injuries, or their effects, contribute, the employer in whose employment the subsequent injury is sustained shall be liable only for the compensation to which such resulting; condition entitled the employee, less all compensation which the provisions of this law would have afforded on account of the prior injury or injuries had they been compensated for thereunder."

In the case of *Combs and W. C. B.* v. *Hazard B. G. Coal*

*Corp.*, 207 Ky. 242, 268 S. W. 1070, 1071, the words "previously injured" in this section are construed to cover a case of congenital blindness in one eye when on subsequent injury to the other eye the employee had lost the sight thereof. The employee was held to be entitled to compensation as for total permanent disability less the amount which would have been paid for the loss of sight in the eye previously injured. The court said:

"The thing provided for is a condition—total disability. A case of total disability exists when the only good eye is put out. The statute was intended to provide for the employee who was in fact permanently disabled, in order that he would not become a charge on the public, or be without any means of support. It covers all cases of total permanent disability. But the maimed employee should not in case of total permanent disability be paid as much as one who was not maimed in any way, and so the statute allows a deduction for what would have been allowed for the previous injury, whether it occurred at one time or another. To illustrate, if the employee has lost the use of one hand or foot by a congenital defect, or from any other cause, it was intended that under the statute this should be taken into consideration in the allowance for total disability resulting from the injury to the other hand or foot."

The Missouri statute (Mo. St. Ann. § 3317, p. 8253) provided:

"All cases of permanent disability where there has been a previous disability shall be compensated on the basis of the average annual earnings at the time of the last injury. * * * If the resulting condition be a permanent total disability, the compensation therefor shall be two-thirds of that for permanent total disability in other cases."

In *Goebel* v. *Missouri Candy Co.*, 227 Mo. App. 112, 50 S. W. (2d) 741, the court in construing the above statute had before it a case where a workman twenty years previously had been injured by loss of the four fingers of the right hand. In a subsequent accident he lost his left hand. This was held to have resulted in total permanent disability, entitling the workman to two-thirds of the total award for permanent total disability. The fact that the first injury occurred prior to the passage of the act seemed to have made no difference, since no point was made of it, and of course

no decision rendered on that question. It was taken for granted that the statutory language "previous disability" covered the case of an injury which had been incurred some twenty years before and prior to the passage of the act. Other cases take for granted, and without decision on the precise point, that a previous disability incurred prior to the passage of the act may be compensated when the then condition combined with the subsequent disability results in total permanent disability. *Kriegbaum* v. *Buffalo Wire Works Co.*, 182 App. Div. 448, 169 N. Y. S. 307; *Schwab* v. *Emporium Forestry Co.*, 167 App. Div. 614, 153 N. Y. S. 234; *McNeil* v. *Panhandle Lumber Co.*, 34 Idaho 773, 203 P. 1068; *Industrial Commission of Colorado* v. *State Insurance Compensation Fund*, 71 Colo. 106, 203 P. 215; *In re Branconnier*, 223 Mass. 273, 111 N. E. 792; *Liptak* v. *Industrial Accident Comm. of California*, 200 Cal. 39, 251 P. 635; *Knoxville Knitting Mills* v. *Galyon*, 148 Tenn. 228, 255 S. W. 41, 30 A. L. R. 976. In other cases the date when and place where the previous injury occurred are not even mentioned. The important factors are the condition of the workman at the time of the subsequent injury and condition of disability which results to him from the subsequent injury. *Wabash Ry. Co.* v. *Industrial Comm.*, 286 Ill. 194, 121 N. E. 569; *Jennings* v. *Mason City Sewer Pipe Co.*, 187 Iowa 967, 174 N. W. 785.

The case was argued on the theory that the plaintiff was entitled to be rated as one totally and permanently disabled and to have compensation as such under R. S. Utah 1933, 42-1-63. This section as now worded cannot apply to the case, for the reason that the last injury to the employee occurred prior to the amendment of the section by the Revised Statutes. By the revision of 1933 the words "or permanent and complete loss of use" were inserted in the following sentence:

"The loss, or permanent and complete loss of use, of both hands or both arms, or both feet or both legs, or both eyes, or of any two there-

of, shall constitute total and permanent disability, to be compensated according to the provisions of this section."

The case is controlled by the section as it was prior to amendment (Comp. Laws 1917, § 3139, as amended by Laws 1919, c. 63, p. 163). This court construed the paragraph last quoted, before amendment, to require the actual loss by severance of the named members of the body, and to exclude the loss of use of such members, as constituting total and permanent disability. *Spring Canyon Coal Co.* v. *Industrial Commission*, 74 Utah 103, 27 P. 206. The permanent partial disability which John Marker incurred previous to the loss of his leg was merely the loss of use of his right eye and not the entire loss of the eye by enucleation.

The conclusion reached by the commission from its findings was that total blindness in one eye was not shown. The findings, however, are such as to warrant the conclusion that industrially the loss of sight was complete. The evidence in the case rather clearly indicates this to be the fact. The employee testified he was blind in the right eye as a result of the accident in 1903. At the hearing a demonstration was made which indicated he could distinguish fingers at a distance of about two feet. The commission, not being satisfied, requested that the employee submit himself for examination to an eye specialist to be designated by the commission. He consented and was examined by two eye specialists. One of these reported to the commission, "Am of the opinion that an operation would be of no benefit to him. In its present state it is a blind eye and I am afraid must remain so." The other specialist made a more detailed report of the condition of the eye, but concluded:

"In summary, I find that Mr. Marker is industrially blind in his right eye. His vision can be improved some with glasses. I believe it could be greatly improved by an operation which would remove the membrane in the center of the pupillary area. However, when this is done in all probability he still would be rated as industrially blind in his right eye, according to the rating of your Commission, since you do not consider the vision he could get with glasses."

The evidence further shows that the employee made application for work after his last injury to the Utah Fuel Company, his last employer, and that he was rejected on medical examination as being unfit for work.

The resulting condition to the employee did not entitle him to a rating of permanent total disability under the provisions of the statute, without a finding to that effect as a fact, because he had not lost his right eye by enucleation but only the sight thereof. Nevertheless, he is not excluded from the benefits of this statute because ■ not found to be permanently totally disabled. Under the provisions of paragraph 6 of section 3140 as amended (R. S. Utah 1933, 42-1-65), he would be entitled to relief if the "compensation payable for the disability resulting from the combined injuries is greater than the compensation which, except for the preexisting disability, would have been payable for the latter injury." If the commission shall so find, then the additional compensation is payable from the special fund; the employer having theretofore fully discharged all its obligations to the employee under the law.

The order of the commission denying compensation is set aside, and the cause remanded for further proceedings not inconsistent with this opinion.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.