J & W JANITORIAL COMPANY,
Plaintiff,

v.

The INDUSTRIAL COMMISSION OF UTAH and Frank L. Tilt, Father of Jeffrey Matthew Tilt, Deceased, Defendants.

No. 18130.

Supreme Court of Utah.

March 18, 1983.

Timothy C. Houpt, Salt Lake City, for plaintiff.

David L. Wilkinson, Salt Lake City, for defendants.

HOWE, Justice:

J & W Janitorial Company seeks the reversal of an order of the Industrial Commission which found it liable for death benefits of an employee who was killed in an accident occurring on the premises where he worked. The controlling issue is whether the deceased employee was killed in an accident which arose out of or in the course of his employment.

Although he had worked for J & W Janitorial previously, on the night of his death the deceased employee, Jeffrey Matthew Tilt, was filling in for another member of a three-man crew who cleaned a bakery. Among the machines they cleaned was an industrial mixer about six and a half feet high, five feet wide, with a raised platform behind it. Bakery workers poured flour and other ingredients into the mixer from this platform. Janitorial crew members swept and hosed out the mixer while standing on the platform. No janitorial duties required any employee to get inside the mixer.

That night Jeffrey had ridden to work with another crew member. They had made plans to obtain tickets after work for an event they both wanted to attend at a later date. When the crew finished their cleaning duties, they remained in the bakery. One crew member was sitting and waiting for some beer to get cold. Jeffrey and the third crew member were "fooling

around ... playing hide and seek." Jeffrey got into the mixer and called the others to open a door. Without knowing where Jeffrey was hiding, one of the others, while attempting to open the door, mistakenly pushed the wrong button activating the mixer. Jeffrey was killed.

Jeffrey's father applied to the Industrial Commission for death benefits because of his son's employment with J & W Janitorial. Because he was not dependent upon his son, the father could receive only $1,000 toward burial expenses according to U.C.A., 1953, § 35–1–68. But the Second Injury Fund, which was entitled to $18,720 from J & W Janitorial if Jeffrey was an employee who had been killed in the course of employment, agreed to give $3,000 of that amount to the father for burial expenses.

J & W Janitorial contends that the Industrial Commission erroneously concluded that Jeffrey's death arose "out of or in the course of his employment" as required by U.C.A., 1953, § 35–1–45.

■ The fact that the fatal accident occurred after work does not necessarily render the death outside the coverage of the compensation act. Larson, Vol. 1A Workmen's Compensation § 21.60 at 5–40 (1979). The question is not whether the employee was engaged in performing only work duties but whether the accident occurred as a result of his having engaged in "those things which it should reasonably be expected an employee would do in connection with those duties, ..." *United States Steel Corp. v. Draper,* Utah, 613 P.2d 508, at 509 (1980).

Horseplay may become, under certain circumstances, reasonably expected of an employee in connection with his work duties. In *Prows v. Industrial Comm'n.,* Utah, 610 P.2d 1362 (1980), this Court reviewed factors to be considered in evaluating whether an injury during horseplay is one which arises "out of or in the course of employment." They are: (1) the extent and seriousness of the deviation, (2) the completeness of the deviation, (3) the extent to which horseplay has become a part of the employment, and (4) the extent to which

the nature of the employment may be expected to include some such horseplay.

■ This case does not meet the requirements of that four part test. The hide and seek occurred after the work was finished and the crew had no work-related reason for remaining on the premises. Consequently, the deviation was serious and substantial. Secondly, the deviation was not co-mingled with the performance of any work duty. Jeffrey and the others were merely passing time before going to wait in line to buy tickets. No evidence suggested either that Jeffrey was in the process of completing work while waiting for a ride or that he was (or that the others were) required to remain at the bakery at all. Thirdly, there was no evidence that the horseplay engaged in on the night of the accident had become a customary practice. And, finally, this was not the type of job that promoted horseplay. The crew's duties required no lull in activity or shared tasks which would encourage horseplay. Further, the work day was over and the horseplay did not grow out of work or after-work-but-work-related activity. For instance, the crew's cleaning up of a beer bottle they had broken during the horseplay was a result of their own thorough deviation from work while "hanging around" a half hour or so after work, not part of their janitorial tasks. Consequently, the fatal accident did not arise "out of or in the course of employment." Cf. *Twin Peaks Canning Co. v. Industrial Comm'n.,* 57 Utah 589, 196 P. 853 (1921).

We recognize the apparent broadening effect of the disjunctive "or" in our statute; but, we also observe that previous interpretations of the statute have not been so broad that an employee's remaining on the work premises is, by itself, sufficient to justify an award. Neither the horseplay nor the remaining on the premises had any connection with work duties in this case. In other words, the accident did not occur as a result of Jeffrey having engaged in "those things which it should reasonably be expected an employee would do in connection with [work] duties." *United States Steel Corp. v. Draper,* supra.

We acknowledge the recognized rule of construction which resolves any doubt regarding compensation in favor of recovery. *McPhie v. Industrial Comm'n.,* Utah, 567 P.2d 153 (1977). And, we are mindful of the deference this Court gives the Industrial Commission's decisions on review. *Kaiser Steel Corp. v. Monfredi,* Utah, 631 P.2d 888 (1981). Nonetheless, the only reasonable conclusion from the evidence here was that Jeffrey was not killed in an accident which arose "out of or in the course of employment."

The order against J & W Janitorial is reversed. No costs awarded.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.